UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MICHAEL R. MATTHEWS (#109996)**          CIVIL ACTION

**VERSUS**                                 BY CONSENT

**RICHARD STALDER, ET AL.**                NO. 06-0567-C-M2

### R U L I N G

This matter comes before the Court on the defendants' Motion to Dismiss and Motion for Partial Summary Judgment, rec.doc.nos. 37 and 40. These motions are opposed.

The pro se plaintiff, an inmate confined at Dixon Correctional Institute ("DCI"), Jackson, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Secretary Richard Stalder, Warden James LeBlanc, Food Service Manager Filmore Larkins, Security Supervisor Joseph Turner, Kitchen Supervisor Jeffrey Singleton, Sgt. Virginia Brown, Sgt. Elizabeth Williams, Security Supervisor Douglas McDonald, Dr. Howard Martin, Dr. Tarver and unidentified members of the DCI Medical Department Nursing Staff, complaining that the defendants have violated his constitutional rights through deliberate indifference to his serious medical needs and through the use of excessive force.[1]

---

[1] Attempts by the United States Marshal's Office to serve defendants Elibeth Williams and Dr. Howard Martin have proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of these individuals. Accordingly, these defendants have not appeared in this proceeding and have not participated in the instant motions. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims against defendants Elibeth Williams and Dr. Howard Martin, be dismissed, without prejudice.

In his Complaint, the plaintiff alleges that on September 3, 2005, he slipped and fell while working in the prison kitchen, injuring his lower back. He asserts that this fall was caused by a wet and greasy drain cover located on the floor of the kitchen and by the absence of any warnings regarding this peril. After the accident, he was taken to the prison infirmary where he was examined by a nurse, given an ice pack, given medication for pain, issued a 2-day limited duty status for "bed-rest", and referred for diagnostic x-rays. That night, and again on September 5, 2005, he again sought medical attention, was again seen by a nurse, was given medication for complaints of pain, was given an extension of his duty status, and was given permission to utilize crutches for 2 days. On September 6, 2005, diagnostic x-rays were taken. On September 7, 2005, the plaintiff again sought medical attention but was not seen by the physician, defendant Dr. Howard Martin, until September 8, 2005. Dr. Martin advised the plaintiff that the results of the x-rays were not yet available, but that he believed that the plaintiff had suffered a pulled muscle in his lower back. This diagnosis prompted defendant Martin to prescribe additional pain medication and to issue the plaintiff a 2-week limited duty status. After seeking further medical attention on September 11 and 12, 2005, the plaintiff was again seen by Dr. Martin on September 15, 22 and 30, 2005. Defendant Martin advised the plaintiff that the x-rays were negative for any broken bones and that he continued to believe that the plaintiff had suffered a pulled muscle but, because of the plaintiff's continuing complaints of pain and numbness, a CT Scan would be ordered "ASAP". In the interim, on one occasion, the plaintiff was wheeled to the infirmary in a wheelchair but a nurse at the infirmary - Nurse Mayerux, not named as a defendant herein - refused to allow the plaintiff to retain the wheelchair because no duty status had been issued for one. On another occasion, another nurse - Nurse Waddell, not named as a defenant herein - denied the plaintiff use of a cane for

the same reason.  Finally, on October 4, 2005, the plaintiff was transported to Earl K. Long Hospital in Baton Rouge, Louisiana, for the referenced CT Scan, but the results of this test were not available until October 27, 2005, at which time defendant Martin advised the plaintiff that he had sustained a "ruptured disc" and issued the plaintiff a referral to be seen by a neurosurgeon.  The plaintiff sought and received medical attention on numerous occasions thereafter, including on November 2, 7, 20, 21 and 22, 2005, December 6 and 19, 2005, January 4, 6 and 26, 2006, February 4, 6, 13 and 17, 2006, March 2 and 8, 2006, April 3, 6, 12, 16 and 24, 2006, May 2, 3, 11, 18 and 31, 2006, June 6, 7, 10, 23 and 26, 2006, and July 3, 12 and 25, 2006.  He acknowledges that during these many visits, he was at various times seen by nurses, physicians and/or medical technicians.  In addition, he was variously given additional medication for pain, additional limitations upon his duty status (including instructions for no duty in the fields and for a lower bunk), and additional referrals for diagnostic testing and evaluation by specialists.

In addition to the foregoing, the plaintiff alleges that on November 21, 2005, defendant Major Douglas McDonald approached and confronted the plaintiff regarding an administrative grievance which the plaintiff had filed relative to the perceived dangerous condition in the prison kitchen.  The plaintiff alleges that when he refused to drop this grievance, defendant McDonald subjected the plaintiff to excessive force in the form of punches and kicks to the plaintiff's jaw and knee.  Further, on November 28, 2005, and May 31, 2006, security officers, Lt. Elgin and Lt. Fowler (not named as defendants herein) refused to honor the plaintiff's duty status and ordered the plaintiff to work in the fields.  On the latter date, Lt. Fowler issued the plaintiff a disciplinary report for refusing to perform such work.  The plaintiff also complains that in May and June, 2006, notwithstanding that he had difficulty getting into a top bunk, he was ordered to do so by security officers, including Sgt. Boss,

Lt. Sloan, Sgt. Turner and Lt. Mcintyre (all but Sgt. Turner not named as defendants herein), resulting in the plaintiff sustaining a fall on June 6, 2006, as he was attempting to do so. This resulted in the plaintiff being issued a duty status for a lower bunk on June 10, 2006. Finally, the plaintiff complains that supervising officials at DCI and with the Louisiana Department of Corrections have failed to properly train or supervise subordinate officers and have failed to properly investigate his complaints.

Addressing first the defendants' motion for partial summary judgment, the defendants assert, relying upon certified copies of the plaintiff's administrative remedy proceedings, that the plaintiff has failed to exhaust administrative remedies relative to certain of his claims. Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him prior to the institution of suit in federal court relative to prison conditions. This provision is mandatory and allows for no exceptions. Further, summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure.

Upon a review of the plaintiff's Complaint, together with a review of the plaintiff's administrative remedy proceedings filed into the record of this proceeding, it appears that the defendants' motion is well-taken and that most of the plaintiff's claims have not been exhausted through the administrative process. Specifically, there is no claim whatever in any of the plaintiff's grievances that he was subjected to excessive force by defendant McDonald on November 21, 2005, that he was ordered to work in the DCI fields on November 28, 2005 and May 31, 2006, that he was

wrongfully issued a disciplinary charge on the latter date, that defendant Turner ordered the plaintiff get into a top bunk on June 6, 2006, that he has been denied requests for a wheelchair or cane, or that there has been any failure on the part of the defendants to train and/or supervise employees or to investigate his complaints. Accordingly, it is clear that the plaintiff has not exhausted administrative remedies relative to these claims and that the defendants are entitled to summary judgment, dismissing these claims pursuant to 42 U.S.C. § 1997e.

Turning to the defendant motion to dismiss and to the plaintiff's remaining claims, those which have been exhausted through the administrative process, the plaintiff asserts that he was exposed to unsafe working conditions which caused a slip and fall injury on September 3, 2005, that he has been denied appropriate medical care, and that on May 31, 2006, security officers refused instructions from a nurse to allow him to utilize a lower bunk in his cell.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may not be granted unless it appears certain that the plaintiff will be unable to prove any set of facts in support of his claim that would entitle him to relief. Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994), citing Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). See also Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th Cir. 1994) ("A dismissal will not be affirmed if the allegations support relief on any possible theory"). In reviewing a motion to dismiss under this Rule, this Court must accept all well-pleaded facts as true, and must review them in the light most favorable to the plaintiff. Green, supra, at 1086.

In response to the plaintiff's allegations, the defendants assert that they are entitled to qualified immunity. Specifically, they contend that the plaintiff has failed to make sufficient allegations of conduct

on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  <u>Hale v. Townley</u>, 45 F.3d 914 (5th Cir. 1995).  As recently enunciated in <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court must determine whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, must be undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful <u>in the situation which he confronted</u>.  <u>Id.</u>  In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his constitutional rights.

Undertaking the <u>Saucier</u> analysis, the Court concludes that the defendants' motion is well-taken and that the plaintiff's allegations fail to overcome the assertion of qualified immunity.

Addressing first the plaintiff's claim that he was exposed to an unreasonably dangerous condition on September 3, 2005, which condition allegedly caused him to sustain a fall and injury on that date, this claim, of an alleged slippery condition in the DCI kitchen, implicates the plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment in the form of an unconstitutional condition of confinement.  In this regard, however, it is well-settled that the United

States Constitution imposes upon prison officials only minimal requirements in the treatment and facilities which they provide to prisoners. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." Harris v. Angelina County, Texas, 31 F.3d 331 (5th Cir. 1994), citing Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Second, under a subjective standard, the Court must determine whether the prison official responsible for the deprivation was "'deliberately indifferent' to inmate health or safety". Farmer v. Brennan, supra. Mere negligence is not a basis for liability under § 1983. Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). Rather, prison officials must both be personally aware of facts from which an inference may be drawn that a substantial risk of serious harm exists, and they must also have drawn the inference. Farmer v. Brennan, supra. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. Woods v. Edwards, 51 F.3d 577 (5th Cir. 1995); Wilson v. Seiter, supra.

    In the instant case, there is no indication whatever that any of the named defendants have been deliberately indifferent to the plaintiff's health or safety or have deprived the plaintiff of any basic human need. All that the plaintiff has alleged is that the drain cover in the DCI kitchen was unreasonably slippery and that this condition caused him to sustain a fall and injury on September 3, 2005. There is no allegation that any defendant was personally aware, prior to the plaintiff's injury, that this condition existed or that it presented a significant risk of harm to the plaintiff's health or safety. Further, there is nothing in

the record to suggest that the plaintiff and numerous other inmates who worked in the kitchen have been generally unable, on a daily basis, to negotiate this alleged hazard.  Although it may have been preferable, as alleged by the plaintiff, to have placed a mat over the drain or to have posted signs warning of a slippery floor, it is also true that not every minimally deficient condition rises to the level of a constitutional deprivation.  On the record before the Court, therefore, it does not appear that the alleged dangerous condition in the instant case represents the denial of a basic human need or represents deliberate conduct on the part of the defendants in exposing the plaintiff to a serious risk of injury of which the defendants were subjectively aware.  Accordingly, on the record before the Court, the Court concludes that there is no basis for the imposition of liability against the defendants arising out of the plaintiff's accident, and that this claim should be dismissed.

The plaintiff next complains of the medical care he has received at DCI since the occurrence of the referenced accident.  In this regard, however, in order for an inmate-plaintiff to prevail on a claim that his constitutional rights have been violated by the provision of improper or inadequate medical care, he must show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985).  Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue.  Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981).  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra.  Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate

indifference" under the Eighth Amendment.  Farmer v. Brennan, supra.  As stated in Farmer, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

Applying this standard to the plaintiff's allegations of fact, it appears clear that although he has not been satisfied with the medical care which he has received at DCI, his complaints have nonetheless been attended to and have not been ignored.  Specifically, he acknowledges that he was taken to the prison infirmary on the date of the accident, and was given medication and a limited duty status.  In response to his continuing complaints thereafter, he has admittedly been seen on numerous occasions by nurses, physicians and medical technicians.  He has been issued pain medication and has been given limited duty statuses in response to his complaints.  He has been referred on repeated occasions for diagnostic testing and for consultation with outside experts.  In short, it is abundantly clear that the defendants have not ignored his complaints but have sought to diagnose, ameliorate and treat his ongoing symptoms and complaints.  Based upon this acknowledged attention to the plaintiff's medical complaints, the Court is unable to conclude that the defendants have been deliberately indifferent to his serious medical needs.  To the contrary, the most which may be inferred from the plaintiff's allegations is that the defendants' conduct has amounted to negligence or medical malpractice, which is not a cognizable claim under § 1983.  Oliver v. Collins, 904 F.2d 278 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).  Accordingly, on the record before the Court, there is no factual basis for the imposition of liability against these defendants on this claim.

Finally, the remaining claim which the plaintiff has exhausted through the administrative process is that on May 31, 2006, he was not allowed to utilize a lower bunk in his cell notwithstanding that Nurse Mayerux instructed officers Boss and Sloan that he should be allowed to do so.[2]  As a result, the plaintiff was required to sleep on the floor of his cell until June 10, 2006, when the plaintiff was apparently allowed to utilize a lower bunk.  It appears, however, that the plaintiff has not named as defendants to this proceeding either Nurse Mayerux or officers Boss or Sloan.  Accordingly, these persons are not before the Court, and there is no person named as a defendant herein who is alleged to have had any involvement with the incident alleged.  In the absence of any named defendant who is alleged to have personally and directly participated in the conduct of which the plaintiff complains, there is no basis whatever for a finding of liability on the part of the persons who *have* been named as defendants herein.   Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983).  Accordingly, the defendants are entitled to dismissal of this claim made against them by the plaintiff.

The plaintiff also sought to invoke the supplemental jurisdiction of this Court over his state law claims.  A District Court, however, may decline to exercise supplemental jurisdiction over a claim or claims if the Court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. §1367.  Upon a finding by the Court that the plaintiff's federal claims should be dismissed, the Court declines to

---

[2]     Whereas the plaintiff alleged in his Complaint that he was ordered by Sgt. Turner and Lt. McIntyre to climb into an upper bunk on June 6, 2006, resulting in a fall which caused him injury, the plaintiff made no such claim in his administrative remedy proceedings.  The only similar claim asserted in the plaintiff's administrative proceedings is that on May 31, 2006, Sgt. Boss and Lt. Sloan refused to allow the plaintiff to sleep in a lower bunk, resulting in his sleeping on the floor of his cell for eleven (11) days.

exercise supplemental jurisdiction over any state law claims which the plaintiff may have.

Accordingly,

**IT IS ORDERED** that the plaintiff's claims against defendants Elibeth Williams and Dr. Howard Martin be and they are hereby **DISMISSED** for failure of the plaintiff to serve these defendants within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the defendants' motion for partial summary judgment and motion to dismiss, rec.doc.nos. 37 and 40, be and they are hereby **GRANTED**, dismissing the plaintiff's claims in part for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e and in part for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over any state law claims which the plaintiff may have.

Judgment shall be entered accordingly.

Signed in chambers in Baton Rouge, Louisiana, January 23, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**